**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 9:26-cv-80481-DMM**

GRILL RESCUE LLC d/b/a RESCUE LLC,

Plaintiff,

v.

SHENZHEN REEKOOS HOUSEWARE
CO. LTD, et al.,

Defendants.
_______________________________________/

**DEFENDANT FROST BUDDY LLC'S MOTION TO DISMISS**
**FIRST AMENDED VERIFIED COMPLAINT**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendant Frost Buddy LLC ("Frost Buddy" or "Defendant"), by and through undersigned counsel, and pursuant to Federal Rules of Civil Procedure 8 and 12(b)(1), (3), and (6), and Local Rule 7.1, respectfully files this Motion (with incorporated memorandum of law) to dismiss the First Amended Verified Complaint [D.E. 30] filed by Plaintiff Grill Rescue LLC ("Plaintiff" or "Grill Rescue"). In support thereof, Frost Buddy states as follows:

## I. INTRODUCTION

Rather than defend its original Complaint ("Complaint") in response to Frost Buddy's June 25, 2026 Motion to Dismiss [D.E. 20], Plaintiff filed a First Amended Complaint ("FAC"). The FAC does not remedy the jurisdictional, venue, standing, preemption and other substantive pleading defects vis-à-vis Frost Buddy. Accordingly, dismissal of the FAC is warranted.

Chief among the fatal deficiencies is Plaintiff's continued use of a shotgun pleading strategy. In doing so, Plaintiff fails to give Frost Buddy (one of three named defendants) plausible notice of the factual allegations and legal claims specifically being made against it, distinct from the other two defendants. Plaintiff does not specify what it contends Frost Buddy – individually – knew or did from its homebase in Illinois, separate and not derivative from Defendant Shenzhen Reekoos Houseware Co., LTD ("Reekoos") and Defendant George Gu ("Gu"), both Chinese citizens. Plaintiff alleges it is a beverage tumbler and cooler manufacturer that entered into a business relationship with Defendants Reekoos and Gu in 2020, specifically that Defendant Reekoos (and Gu, on Reekoos' behalf) allegedly signed a non-disclosure agreement ("NDA") on May 15, 2020. Frost Buddy is alleged to be a competitor of Plaintiff in the relevant beverage container marketplace, but is not alleged to have signed this alleged NDA. The purported breach of the NDA factually underlies all of Plaintiff's legal assertions, but there is no allegation in the FAC that Frost Buddy is a party to the NDA, subject to obligations of the NDA, or ***itself*** guilty of

misappropriation of any information. As discussed further below, the allegations against all three defendants are so obscured that Frost Buddy cannot practically respond. Even if it could, Plaintiff filed in the wrong venue, without standing or sufficient factual allegations as to the federal questions presented in Counts I and III, leaving only meritless and/or preempted state law claims against Frost Buddy in Counts IV, V, VI, and VII,[1] for which this Court should deny supplemental jurisdiction. For all of these reasons, Frost Buddy requests dismissal of the FAC.

## II. SUMMARY OF COMPLAINT AND ALLEGED FACTS

According to the allegations in the FAC, in May of 2020, Plaintiff Grill Rescue entered into a non-disclosure agreement with Defendant Reekoos. FAC ¶¶ 4, 34-47. Defendant Gu allegedly signed the NDA on behalf of Reekoos, and thereafter Grill Rescue shared with Gu and Reekoos designs and other information related to its beverage tumbler and cooler products for purposes of associating Gu and Reekoos in the manufacturing process. *Id.* Grill Rescue alleges that the information it shared with Gu and Reekoos constituted trade secrets. But, Grill Rescue does not delineate what the specific trade secrets are or how they were protected from disclosure other than the NDA. *Id.* ¶¶ 39, 50, 84, 133.

In 2021, Defendant Reekoos filed a patent application with the U.S. Patent and Trademark Office ("USPTO"), titled "Multi-Function Fixing Kit" and designated as application No. 17/335,183 ("the '183 Application"). *Id.* ¶ 51. Reekoos listed Gu as the sole inventor. *Id.* ¶ 53. Plaintiff Grill Rescue alleges it learned of the '183 Application two years later, in May of 2023, and that its founder, Scott Mobley, is the rightful inventor of the invention disclosed. *Id.* ¶¶ 56-58. The '183 Application matured to U.S. Patent No. 11,844,449 ("the '449 Patent") and certain Chinese patent applications later derived from the '449 Patent as well. *Id.* ¶¶ 62-66.

[1] Count II for breach of contract is the only claim directed solely at Reekoos and Gu.

Plaintiff states that "[s]ometime after Gu executed the NDA, Defendants Reekoos and Gu began working with Plaintiff's competitor Frost Buddy." *Id.* ¶ 69. Plaintiff alleges Reekoos and Gu improperly shared information subject to the NDA with Frost Buddy, but Plaintiff does not specifically identify what information was allegedly shared or how. *Id.* ¶ 70. Plaintiff goes on in its pleading to allege Defendants sought to revise the names of the inventors on the '449 Patent to include Frost Buddy's CEO and COO, *id.* ¶¶ 14, 85, and further that a number of U.S. patent applications filed by Frost Buddy in 2023 and 2024 disclosing insulated beverage container inventions purportedly derived from the information Plaintiff shared with Defendants Reekoos and Gu under the NDA, and these patents therefore should be owned by Grill Rescue. *Id.* ¶¶ 72-82. Plaintiff does not allege, however, where or how Frost Buddy allegedly received confidential information or why inclusion of Frost Buddy's CEO and COO as inventors of the '449 Patent is supposedly in error. Instead, all that is found in the FAC are conclusory statements as to Frost Buddy's products allegedly being "based on Plaintiff's misappropriated Confidential Information and trade secret information communicated by Plaintiff in confidence to ***Shenzhen Reekoos and Gu*** under the protection of a duly executed NDA" and the supposition that Frost Buddy would not have sought to claim inventorship or filed patent applications if not for Plaintiff's allegedly confidential information *Id.* ¶¶ 88, 93 (emphasis added). At two points in the FAC, Plaintiff purports to allege that Frost Buddy's actions were "independent" of Defendants Reekoos' and Gu's breach of the NDA, but these allegations nevertheless rely on the existence of the NDA to couch Plaintiff's information as confidential and trade secret-protected. *See* FAC ¶¶ 89-90, 155. At no point does Plaintiff allege that ***Frost Buddy*** took any affirmative action or step to obtain information it knew or should have known was confidential or trade secret to Plaintiff. Instead, the allegations against Frost Buddy are based on implication and association alone.

## III. DISCUSSION

The FAC, as against Frost Buddy, fails in numerous respects, not the least of which is its continued shotgun approach. As set forth below, the FAC does not cure any of the jurisdictional, venue, standing, preemption or pleading defects that pervaded the original Complaint; it simply repackages the same deficient allegations against Frost Buddy. Because Plaintiff has now had a full opportunity to state a viable claim against Frost Buddy and has again failed to do so, and because further amendment would be futile, the FAC should be dismissed with prejudice. *See Mannes v. World Boxing Ass'n*, No. 26-80361-CV, 2026 WL 2042216, at *1-2 (S.D. Fla. June 16, 2026) (Middlebrooks, J.) (denying leave to amend as futile where the proposed pleading rested on "generalized" and "conclusory" allegations that failed to cure the pleading's defect); *Abbate v. Wells Fargo Bank, Nat'l. Ass'n.*, No. 09-62047-Civ., 2010 WL 3446878, at *3 (S.D. Fla. Aug. 31, 2010) (a court "need not allow an amendment … where amendment would be futile").

### A. The First Amended Complaint Is an Improper Shotgun Pleading That Does Not Afford Frost Buddy Sufficient Notice.

Pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6), a complaint must allege facts, accepted as true by the Court, that "state a claim to relief that is plausible on its face." *See Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a Rule 12(b)(6) motion to dismiss, the allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Speaker*, 623 F.3d at 1380 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

"A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading [violates Rule 8(a)(2) and] constitutes a 'shotgun pleading.'" *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1128-29 (11th Cir. 2001)). The first and most common type of shotgun pleading is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015), cited in *Jewish Voice for Peace, S. Fla. v. City of Miami Beach*, No. 25-cv-24126, 2026 WL 1469261 (S.D. Fla. May 26, 2026) (dismissing shotgun-style complaint with one chance to replead). Another form is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322. Third, a complaint is improper if it "commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1323. Finally, "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against," warrants dismissal. *Id.*

The FAC, like the original Complaint, suffers from at least three of the four foregoing fatal errors. In its thirty-six page pleading, Plaintiff refers to the three named defendants collectively over one hundred times. All preceding paragraphs are incorporated into each and every one of the seven Counts, including even the allegations in Count II, which is the only claim nominally made against just Defendants Reekoos and Gu, and not Frost Buddy. Incorporating by reference these prior allegations in the subsequent Counts of course makes no logical sense because only two of the three named defendants are the contracting parties alleged to have signed – and violated – an NDA. Yet there is a single Prayer for Relief that runs across pages 33 through 36 as against all

"Defendants" except sub-paragraphs "a." and "b.", which seek to add inventors on the at-issue patents and/or are directed to Reekoos and Gu alone regarding "breach" of the NDA. The remaining sub-paragraphs "c." through "z." are all directed to "Defendants" and do not once reference "Frost Buddy" by name.

Indeed, nearly all of the ***specific*** allegations ***against*** Frost Buddy are made "upon information and belief":

- "***Upon information and belief***, Defendant Frost Buddy tortiously interfered with Plaintiff's contractual relationship with Defendants Shenzhen Reekoos and Gu, and misappropriated Plaintiff's confidential information and trade secrets." FAC ¶ 2 (emphasis added).

- "***Upon information and belief***, Defendant Frost Buddy, aware of Plaintiff's relationship with Defendants Shenzhen Reekoos and Gu, tortiously interfered with Plaintiff's contractual relationship with Defendants Shenzhen Reekoos and Gu, and misappropriated Plaintiff's confidential information and trade secrets." *Id.* ¶ 13 (emphasis added).

- "***Upon information and belief***, Defendant Frost Buddy is an Illinois limited liability company with its principal place of business located at 511 W. Frederic Ave., Effingham, IL 62401. ***Upon information and belief***, Frost Buddy conducts substantial business throughout the United States, including in the state of Florida. Frost Buddy markets and sells its products, including products derived from Plaintiff's misappropriated Confidential Information and trade secrets, to consumers nationwide through its website (www.frostbuddy.com) and through online retail marketplaces, including Amazon, and ships such products directly to consumers located in Florida and in this District." *Id.* ¶ 18 (emphases added).

- "With respect to Defendant Frost Buddy specifically, ***upon information and belief***, Frost Buddy purposefully directed its tortious conduct toward Plaintiff in this District by knowingly acquiring and exploiting Plaintiff's Confidential Information and trade secrets belonging to a Florida company for its own commercial benefit. Frost Buddy sells competing products derived from Plaintiff's misappropriated Confidential Information directly to consumers in Florida through its website and online marketplaces, thereby purposefully availing itself of the privilege of conducting business activities in this state and causing Plaintiff injury in this District." *Id.* ¶ 26 (emphasis added).

- "***Upon information and belief***, Defendant Frost Buddy knew that Plaintiff is a Florida company with its principal place of business in this District and that its tortious acquisition and use of Plaintiff's Confidential Information, and the sale of competing products derived therefrom, would cause Plaintiff to suffer substantial harm in Florida. Frost Buddy's competing products directly displaced Plaintiff's sales to consumers in this District, and

Frost Buddy derived substantial revenue from sales of such products to Florida customers." *Id.* ¶ 27 (emphasis added).

- "***Upon information and belief***, Frost Buddy was aware of Plaintiff's relationship with Shenzhen Reekoos and Gu and acquired Plaintiff's Confidential Information and trade secret information when they knew or had reason to know that the information was acquired by Shenzhen Reekoos and Gu by improper means; namely, Shenzhen Reekoos' and Gu's breach of their duty to maintain secrecy." *Id.* ¶ 71 (emphasis added).

- "Frost Buddy is a sophisticated, direct competitor of Plaintiff in the specialized market for universal-fit, multi-size beverage container coolers and, ***upon information and belief***, would have readily recognized that the nested internal structure, multi-level geometry, adjustable support, diameter-based positioning, and removable/modular component designs incorporated into its own Universal Buddy and Universal XL products, and disclosed in the '310 Application, '544 Patent, '333 Patent, and '663 Patent, were not the product of Frost Buddy's own independent research and development." *Id.* ¶ 90 (emphasis added).

- "***Upon information and belief***, Frost Buddy's knowledge that the information it received from Shenzhen Reekoos and Gu constituted Plaintiff's Confidential Information and trade secrets, obtained by Shenzhen Reekoos and Gu in breach of their duty of confidentiality to Plaintiff, is further evidenced by Frost Buddy's own conduct in seeking to add its co-founders and executive officers, Brock Mammoser and Mitch Mammoser, as named inventors on the '449 Patent, a patent that Frost Buddy knew or should have known was derived from Plaintiff's Confidential Information disclosed under the NDA." *Id.* ¶ 92 (emphasis added).

- ***Upon information and belief***, Frost Buddy would not have sought to claim an inventorship interest in the '449 Patent, nor filed its own patent applications disclosing the identical nested internal structure, multi-level geometry, adjustable support, diameter-based positioning, and removable/modular component designs, had it not possessed and made use of Plaintiff's Confidential Information and trade secrets. *Id.* ¶ 93 (emphasis added).

These "information and belief" allegations against Frost Buddy are, at best, guesses devoid of factual content. Mr. Mobley, who "verified" the FAC, ***expressly excludes*** allegations made on "information and belief" from his knowledge base, making these paltry allegations against Frost Buddy even more hollow than they already appear. Verification to FAC [D.E. 30 at p. 38].

The remainder of Plaintiff's allegations demonstrate that the essence of Plaintiff's theory against Frost Buddy is derivative of the other defendants' alleged wrongdoing. This is highlighted starkly in, for example, Paragraph 116 of the FAC, stating: "Defendant Frost Buddy acquired its

interest in the Unauthorized Patent Assets ***through Defendants Shenzhen Reekoos' and Gu's misappropriation*** of Plaintiff's Confidential Information and trade secrets…." *Id.* ¶ 116 (emphasis added). In a new Paragraph 155, Plaintiff makes the conclusory statement that "Frost Buddy's interference with Plaintiff's business relationships is independent of, and separate from, Defendants' misappropriation of Plaintiff's Confidential Information and trade secrets," to try to buttress its Count V for Tortious Interference, *id.* ¶ 155, but the allegation is purely conclusory as it does not indicate who, what, when, where, or how Frost Buddy engaged in any wrongful conduct. Plaintiff only alleges that Frost Buddy used "the same online marketplaces and channels" (*id.*) as Plaintiff, which of course is mere competition, not wrongful conduct.

Other than the "information and belief" allegations and the attempt to fabricate derivative liability "through" Reekoos and Gu, the FAC makes no direct factual allegations against Frost Buddy that are not conclusory in nature. For instance, Plaintiff's uses of the word "independent" in Paragraphs 89 and 90 are conclusory because these allegations wholly rely on the existence of the NDA to characterize Plaintiff's information as confidential and trade secret-protected. *Id.* ¶¶ 89-90, 155. Such conclusory allegations "are not entitled to a presumption of truth," and "allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard." *United Am. Corp. v. Bitmain, Inc.*, 530 F. Supp. 3d 1241, 1261 n.21 (S.D. Fla. 2021). The Eleventh Circuit has affirmed dismissal of precisely this kind of multi-defendant shotgun pleading. *See Barmapov v. Amuial*, 986 F.3d 1321, 1323, 1326 (11th Cir. 2021) (affirming dismissal where the plaintiff "lumped together" allegations against multiple defendants, rendering the complaint "unclear and confusing as to which defendant is being charged with which conduct"); *Cruz v. Cinram Int'l, Inc.*, 574 F. Supp. 2d 1227, 1233 (N.D. Ala. 2008) (a complaint asserting allegations against "Defendants" as a group "with no statements of individual wrongs by

individual defendants" is an improper shotgun pleading because "neither Defendants nor the court can determine which Defendant(s) allegedly participated in which acts complained of."). In short, the FAC pleads nothing more than Frost Buddy's guilt by association with Reekoos and Gu. Naming a defendant on that basis, without a reasonable factual inquiry into that defendant's own conduct, is the kind of pleading the Eleventh Circuit has held sanctionable. *See Mike Ousley Prods., Inc. v. WJBF-TV*, 952 F.2d 380, 382-83 (11th Cir. 1992) (affirming Rule 11 sanctions against counsel who named a defendant based on association without a reasonable factual basis for his involvement).

Plaintiff's FAC, as against Frost Buddy, is a textbook shotgun pleading. The Court should dismiss the FAC against Frost Buddy on this basis alone.

**B. <u>Venue Is Improper.</u>**

In addition to filing a shotgun pleading, Plaintiff has failed to establish proper venue. "On a motion to dismiss based on improper venue, the plaintiff has the burden of showing that venue in the forum is proper." *Graceland v. Plutus Enters. LLC*, No. 8:21-cv-2356, 2022 WL 1212801, at *3 (M.D. Fla. Apr. 25, 2022) (dismissing for improper venue) (quoting *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004)). "'Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws,' which is generally governed by 28 U.S.C. § 1391." *Waste Pro USA, Inc. v. Adams Sanitation Holding Co., LLC*, No. 6:21-cv-1521, 2022 WL 19842681, at *1 (M.D. Fla. July 18, 2022) (dismissing for improper venue and quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013)). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred

under § 1406(a)." *M Tobacos, Inc. v. Case*, No. 14-cv-81481, 2015 WL 11438107, at *2 (S.D. Fla. Apr. 17, 2015) (Middlebrooks, J.) (dismissing for improper venue).

Nor can Plaintiff manufacture venue over Frost Buddy by pointing to its two foreign co-defendants. Reekoos and Gu are both alleged to be citizens of China. While 28 U.S.C. § 1391(c)(3) provides that "a defendant not resident in the United States may be sued in any judicial district," it also commands that "the joinder of such a defendant *shall be disregarded* in determining where the action may be brought with respect to other defendants." 28 U.S.C. § 1391(c)(3) (emphasis added). The presence of Reekoos and Gu thus drops out of the analysis, and venue must be established as to Frost Buddy – an Illinois company not a party to the NDA – standing on its own.

In its original Complaint, Plaintiff alleged venue was proper solely "because a substantial part of the events or omissions giving rise to the claims herein occurred in this District." Compl. [D.E. 1] ¶ 24. As the only alleged basis for venue, Frost Buddy moved to dismiss for lack of venue. Now, in its FAC and as an apparent but futile attempt to shore up venue in the Southern District of Florida, Plaintiff adds:

> Upon information and belief, Frost Buddy conducts substantial business throughout the United States, including in the state of Florida. Frost Buddy markets and sells its products, including products derived from Plaintiff's misappropriated Confidential Information and trade secrets, to consumers nationwide through its website (www.frostbuddy.com) and through online retail marketplaces, including Amazon, and ships such products directly to consumers located in Florida and in this District.

*See* FAC ¶ 18. In subsequent paragraphs of the FAC, Plaintiff alleges Frost Buddy (i) directed its alleged tortious conduct toward Plaintiff in this District and (ii) knew Plaintiff is a Florida company and that competing with Plaintiff would cause harm in the Southern District. *Id.* ¶¶ 26-27.

The conclusory sentences in Paragraph 18 of the FAC about Frost Buddy's generalized, allegedly nationwide sales of "products," not necessarily tied to the alleged trade secrets or specific UNIVERSAL BUDDY and UNIVERSAL XL BUDDY beverage containers at issue, do not save

venue in the Southern District of Florida. In *Waste Pro USA, Inc. v. Adams Sanitation Holding Co., LLC*, the Middle District of Florida, applying Eleventh Circuit precedent, dismissed trademark claims for lack of venue where the only alleged facts supporting venue were website sales that potentially could have reached consumers in that District. 2022 WL 19842681, at *1. In *M Tobacos,* 2015 WL 11438107, this Court dismissed a Lanham Act claim for lack of venue, stating:

> One of the central purposes of statutory venue is to ensure that a defendant is not haled into a remote district having no real relationship to the dispute…. Without any indication that consumers are even aware of Plaintiff's trademark in this District, Plaintiff has failed to demonstrate the likelihood of consumer confusion.

*Id.* at *3. Similarly, here, Plaintiff has not alleged any specific consumer in this District is "even aware" of Frost Buddy's specific UNIVERSAL BUDDY and UNIVERSAL BUDDY XL products allegedly derived from Plaintiff's confidential information, let alone purchased them.

Paragraphs 26 and 27 of the FAC, wherein Plaintiff includes vague allegations that Frost Buddy directed its alleged tortious conduct toward Plaintiff and knew Plaintiff would suffer harm in the Southern District, do not aid Plaintiff in establishing venue. The seminal case in the Eleventh Circuit, *Jenkins Brick Co. v. Bremer*, establishes the controlling standard that only events with a "close nexus to the wrong" and that give rise to the claim are relevant, and courts must focus on the defendant's activities, not the plaintiff's. 321 F.3d 1366, 1371-73 (11th Cir. 2003). Applying that standard, this Court has held that a plaintiff's residence in the District and the fact that it "may have felt the effects of the purportedly wrongful conduct while living" here do not establish venue under § 1391(b)(2). *Robey v. JPMorgan Chase Bank, N.A.*, 343 F. Supp. 3d 1304, 1317 (S.D. Fla. 2018). That is similar to what Plaintiff alleges: that the NDA was negotiated from this District and that Grill Rescue felt its harm here – plaintiff-side facts insufficient, as to venue, under *Jenkins Brick* and *Robey*. There are no facts in the FAC that allege any knowledge by Frost Buddy or direction of tortious activity by Frost Buddy into this District.

The empty allegation that Frost Buddy, "upon information and belief," generally makes products available for purchase on its website and Amazon, for consumers in this District to hypothetically purchase, and thus in turn directed tortious activity at Plaintiff to cause harm in this District, are wholly lacking of the substance required to fix venue here. Plaintiff has not met its burden to establish venue in this District, making dismissal[2] warranted on this ground as well.

### C. Plaintiff Lacks Standing for Its Count I Seeking Declaratory Judgment of Patent Ownership and Inventorship.

In its Count I for declaratory judgment against all defendants, Plaintiff asks this Court to review and correct the inventorship of a number of patents, including the '449 Patent, to include Plaintiff's representatives as inventors on them all, and to thereafter force an assignment to Plaintiff, all pursuant to 35 U.S.C. § 256. *See* FAC ¶¶ 103-121, Prayer for Relief ¶ v. It is true that 35 U.S.C. § 256 empowers a district court to order the Director of the USPTO to issue a new patent certificate if an error is identified as to inventorship. *See Armor Screen Corp. v. Storm Catcher, Inc.*, No. 07-81091, 2008 WL 5746938, at *8 (S.D. Fla. Nov. 10, 2008) (quoting 35 U.S.C. § 256; citing *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004)). Yet, there it is presumed that named inventors are "to be the 'true and only' inventors." *Id.* It is a heavy burden to prove otherwise, requiring the party seeking a correction establish "its position by 'clear and convincing, corroborated evidence.'" *Id.* But, before a court may evaluate the merits of a claim of inventorship, it must determine the party seeking the correction has standing to seek relief.

---

[2] The decision to transfer or dismiss is within the Court's discretion. *See M Tobacos*, 2015 WL 11438107 at *2 (citing *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 985 (11th Cir. 1982)). Under the circumstances of this case, including the shotgun pleading approach Plaintiff has deployed against Frost Buddy, it is not in the interests of justice to transfer venue but instead per the Court's discretion, dismissal for improper venue under 28 U.S.C. § 1406(a) is warranted.

*Id.* at *9. "Standing is a threshold jurisdictional issue" under these circumstances. *Id.* (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-04 (1998)).

Not all litigants are entitled to correct a patent; "[a] party must demonstrate standing for each claim he seeks to press." *Id.* (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). "To have standing to invoke section 256, a putative inventor must assert either expected ownership rights in the patent at issue or a "concrete financial interest in the patent, albeit an interest less than ownership." *Id.* at *10 (recommending dismissal for lack of standing and alternatively based upon a lack of proof to warrant correction). Dispositively, standing is determined at the time of filing the claim. *Id.* at *9 (declining to entertain intervention or a subsequent assignment to "expand their arsenal and the scope of litigation"); *see also Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1327 (Fed. Cir. 2009) ("With his ownership of the wakeboard-tower patents being contingent in this manner, Larson has no financial interest in the patents sufficient for him to have standing to pursue a § 256 claim.").

Moreover, § 256 authorizes correction of inventorship only on issued U.S. patents. It supplies no private right of action for pending applications – that question is committed to the USPTO under 35 U.S.C. § 116. As the Federal Circuit has squarely held, "§ 116 does not provide a private right of action to challenge inventorship of a pending patent application"; only "[o]nce a patent issues" does § 256 supply such a right. *HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co., Ltd.*, 600 F.3d 1347, 1354 (Fed. Cir. 2010); *accord Eli Lilly & Co.*, 376 F.3d 1356 n.1 (Fed. Cir. 2004). Yet Plaintiff's "Unauthorized Patent Assets" sweep in four pending U.S. applications (the '310, '689, '834, and '613), a foreign application, and a Chinese patent. FAC ¶ 106. The inventorship claims as to the pending applications must be dismissed for lack of a cause of action, and the claims as to foreign patents and applications must be dismissed for lack of jurisdiction. *See Kamdem-*

*Ouaffo v. PepsiCo, Inc.*, 657 F. App'x 949, 953 n. 5 (Fed. Cir. 2016) (district court "lacks jurisdiction" over claims seeking correction of inventorship of "international patents or patent applications"); *Brown v. Toscano*, 254 F.R.D. 690, 695 (S.D. Fla. 2008) (dismissing request to correct inventorship for failure to state a claim pursuant to Rule 12(b)(6)). Here, as in *Armor Screen Corp.*, no ***party*** to this lawsuit claims to be an inventor incorrectly or not named on any patent referenced in the FAC. The single named plaintiff in this litigation is Grill Rescue; Scott Mobley and Anthony Tranchida are the claimed omitted inventors. Messrs. Mobley and Tranchida are not parties to the case; thus, simply put, standing is lacking.

Plaintiff stretches in its attempt to overcome this deficiency through its new Paragraphs 48, 108 and 109 to its FAC, but the attempt lacks merit. In its new allegations, Plaintiff vaguely alleges that Messrs. Mobley and Tranchida "executed a written agreement that assigned ownership of their interests in their inventions to Plaintiff and agreed to execute any and all documents, including patent assignments, as necessary" and that "Mr. Mobely and Mr. Tranchida have assigned ***various*** patent assets to Plaintiff, including in or around the 2021-2023 timeframe." *See* FAC ¶ 48 (emphasis added). The problem with the new allegation is that Plaintiff's bald assertions that Mobley and Tranchida are inventors have no support in the FAC. Plaintiff does not identify what they purportedly invented, whether it is among the allegedly misappropriated information, and if their supposed inventions were part of the "various" patent assets assigned in 2021-2023. Notably, no assignment document is attached to the FAC. Plaintiff just states, in conclusory fashion, that it "had an expected ownership interest" in not only what Mobley and Tranchida might have invented, but "related inventions" as well. *Id.* ¶¶ 108-109. That cannot be. Conception of a patentable invention is not a vague and amorphous concept, but specific and precise. *See Kridl v. McCormick*, 105 F.3d 1446, 1449 (Fed. Cir. 1997) (conception requires "a definite and permanent idea of the

complete and operative invention" and "must include every feature or limitation of the claimed invention"); *see also Coda Dev. s.r.o. v. Goodyear Tire & Rubber Co.*, 160 F.4th 1350, 1360 (Fed. Cir. 2025) (citing *REG Synthetic Fuels, LLC v. Neste Oil Oyj*, 841 F.3d 954, 962 (Fed. Cir. 2016) ("Conception must include every feature or limitation of the claimed invention."). Until and unless Mobley and Tranchida are shown to be inventors of some specific aspect of the inventions disclosed in the patents and their corresponding patent interest assigned to Grill Rescue, Grill Rescue's request for ownership is aspirational only and standing is lacking before this Court.

**D. <u>Plaintiff Has Failed to Allege a Trade Secret Misappropriated by Frost Buddy.</u>**

To survive Rule 12(b)(6) on its Defend Trade Secret Act ("DTSA") (Count III) and Florida Uniform Trade Secrets Act ("FUTSA") (Count IV) claims, Plaintiff must allege nonconclusory facts that: (1) reasonably identify a trade secret and (2) render the element of misappropriation "plausible on its face." *Compulife Software, Inc. v. Newman*, 959 F.3d 1288, 1310-11 (11th Cir. 2020); *Bell Atl. Corp.*, 550 U.S. at 570. Plaintiff may not merely use "labels and conclusions" or a "formulaic recitation" of elements. *Id.* at 555. Regarding the alleged trade secret itself, there must be "sufficient definiteness to permit a court to apply the criteria for protection." *Coda*, 160 F.4th at 1355; *Mallet & Co. v. Lacayo*, 16 F.4th 364, 384 (3d Cir. 2021) ("When the breadth of a trade secret description is so far-reaching that it includes publicly available information (like patent disclosures) and admitted industry knowledge, that information is not specific enough to be accorded trade secret status.").

In its FAC, the only indications of the alleged trade secrets are passing references to beverage tumbler and cooler "designs and concepts" to include "a nested internal structure, multi-level geometry, adjustable support, diameter-based positioning, and removable/modular components to accommodate different beverage sizes" and the broad categories of "engineering

drawings, dimensional tolerances, material specifications, molds, manufacturing process specifications, and quality control protocols." *See* FAC ¶¶ 7, 35, 41, 71, 83, 84, 92, 93, 107. These vague and generalized characterizations of the tumbler and cooler features and categories of documents without specific identification of what makes these product features "secret" and unknown to anyone else in the world, leave Frost Buddy without knowledge of what Plaintiff believes Defendants Reekoos and Gu provided to Frost Buddy in violation of the NDA. The Court should dismiss Plaintiff's Counts III and IV on this ground alone for failure to state a claim.[3]

Moreover, Plaintiff appears to allege that whatever designs or concepts it believed were trade secrets are already disclosed in the publicly issued patents, including the '449 Patent. To the extent Plaintiff alleges that certain "engineering drawings, dimensional tolerances, material specifications, molds, manufacturing process specifications, and quality control protocols" were not publicly disclosed in patents or product literature, *see* FAC ¶ 84, there is no allegation specifically claiming that Frost Buddy somehow misappropriated that purportedly "secret" information or knew it was secret.

Both the DTSA and the FUTSA require factual allegations in the pleading demonstrating that the defendant acquired, disclosed, or used a trade secret knowing or having reason to know it was obtained by improper means. *See* 18 U.S.C. § 1839(5) (defining "misappropriation" as

---

[3] Plaintiff further acknowledges that it has been selling its Tumbler Buddy and Beer Buddy products through its website and online marketplaces such as Amazon. *See* FAC ¶ 32. To the extent any trade secrets in these product features in fact existed, they would cease being trade secrets as soon as the products came to market. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 155 (1989) (explaining that the public is "free to discover and exploit the trade secret through reverse engineering of products in the public domain or by independent creation"); Fla. Stat. § 688.002(4) (defining "trade secret" as information "not being generally known to, and not being readily ascertainable by proper means"). Accordingly, in the event this case proceeds against any of the Defendants, there will be real questions as to the viability of these trade secrets claims in the first instance once Plaintiff first sold its products in the marketplace.

"acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means"); Fla. Stat. § 688.002(2) (2026) (same). To state a claim, a plaintiff cannot base allegations of misappropriation "solely on 'information and belief' . . . unless they are accompanied by supporting facts that make the claim plausible." *Source One Fin. Servs., LLC v. Corpodian*, No. 0:23-cv-61794, 2024 WL 4441804, *3 (S.D. Fla. Oct. 8, 2024). A plaintiff "*must* allege that the defendant had notice that the information at issue was confidential." *AccessNinja, Inc. v. PassNinja, Inc.*, No. 24-cv-24745, 2025 WL 753332, *6 (S.D. Fla. Mar. 10, 2025) (emphasis in original); *APR Energy, LLC v. Am. Power Holdings, LLC*, No. 9:24-cv-80173, 2026 WL 1458367, *7 (S.D. Fla. Mar. 24, 2026).

The FAC here has no factual support for even an implication that Frost Buddy knew any information provided to it was confidential or trade secret to Plaintiff. It alleges only threadbare, collective assertions that Frost Buddy "knew or had reason to know" of improper acquisition ***by Defendants Reekoos and Gu***, without any implication of how Frost Buddy allegedly "knew" or why Frost Buddy "should have known." Plaintiff instead only accuses Frost Buddy of a mere association with the parties actually alleged to have committed the misappropriation, Defendants Reekoos and Gu. That is not enough. Where a plaintiff, like Grill Rescue, "fail[s] to allege when, how or in what manner" the trade secrets were used or disclosed, and where there are "no factual allegations linking [defendant's] conduct to instances of misappropriation by [the alleged discloser]," such a failure to allege "destroys any [FUTSA and DTSA] claim[s]." *Corpodian*, 2024 WL 4441804 at *3 (dismissing a complaint where the plaintiffs' claims rested only on allegations based solely "on information and belief" and were devoid of any "concrete factual support for any" allegations); *see also* 18 U.S.C. § 1839(5)-(6); Fla. Stat. § 688.002(1)-(2).

Plaintiff does not plausibly plead either a trade secret or "misappropriation" by Frost Buddy under the DTSA or FUTSA. The Court should dismiss Counts III and IV for this reason as well.

### E. **<u>Plaintiff's Remaining State Law Claims Are Preempted and/or the Court Should Decline Supplemental Jurisdiction.</u>**

In Counts V, VI, and VII, Plaintiff alleges three Florida state law claims: tortious interference, unjust enrichment, and conversion. These Counts all fail to state a claim upon which relief may be granted. Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" and while the standard "does not require 'detailed factual allegations', [] it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation.'" *Greenidge v. Fla. Dep't. of Rev.*, No. 8:25-cv-927, 2026 WL 1660372, at *2 (M.D. Fla. June 9, 2026) (declining supplemental jurisdiction after dismissing federal claims on other grounds and citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* 550 U.S. at 555). Yet, even worse in this case, all the FAC alleges is that Defendants Reekoos and Gu "unlawfully-harmed" Plaintiff, and Frost Buddy is allegedly liable just for the company it kept.

The tortious interference and conversion claims are specifically preempted by statute, Title XXXIX, Fla. Stat. § 688.008, because Plaintiff adds no facts to the generalized, collective facts discussed above. "To determine whether allegations of trade-secret misappropriation preempt a plaintiff from sufficiently pleading a separate, but related tort, the court must evaluate whether allegations of trade secret misappropriation alone comprise the underlying wrong; if so, the cause of action is barred by § 688.008." *Phosphorus Free Water Sols., LLC v. Ferrate Sols., Inc.*, No. 6:21-cv-1959, 2022 WL 22987308, at *7 (M.D. Fla. Sept. 1, 2022). Here, as noted above, Plaintiff incorporates all of its preceding allegations into each of its counts, adding "including at least" exemplary paragraphs that include its Count V for tortious interference and its Count VII for conversion, which are preempted by statute. This is fatal. Moreover, there are no new factual

allegations in either of the tort claims, only conclusory legal conclusions based on the prior facts underlying the DTSA and FUTSA count. For example, Plaintiff alleges in ¶ 153 of its Count V for tortious interference that "Defendants are aware of the business relationships between Plaintiff and its customers and prospective customers," but Plaintiff does not identify those customers or how "Defendants" (notably including Frost Buddy without delineation from Reekoos and Gu) would have that awareness. Plaintiff only identifies the not surprising online marketplace, Amazon, as a source of its sales. *Id.* ¶ 154. Paragraphs 158–162 continue in the same fashion, making conclusory statements that in no way distinguish the alleged tortious interference from the FUTSA count. *Id.* ¶¶ 158–162. The Conversion Count VII is no different. As to Frost Buddy, it merely parrots the elements of conversion with no new factual allegations. *Id.* ¶¶ 171–181. Paragraph 173 of the FAC alleges Reekoos and Gu wrongfully retained possession of molds and physical prototypes, but there are no such allegations against Frost Buddy. *Id.* ¶ 173. Because both Counts V and VII rest on the same facts as the trade secret counts and add no materially distinct wrong, they are preempted.

Even apart from preemption, Count V independently fails because Plaintiff has not identified a single specific business relationship with which Frost Buddy allegedly interfered. Under Florida law, "an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994). Indeed, "no cause of action exists for tortious interference with a business's relationship to the community at large." *Id.* Plaintiff's vague reference to "customers and prospective customers" falls far short of this standard.

Count VII likewise fails on independent grounds. Conversion under Florida law cannot lie for trade secrets or business relationships. *Taubenfeld v. Lasko*, 324 So. 3d 529, 543 (Fla. 4th DCA

2021) ("[W]e have found no authority to suggest that a business or contractual relationship can be the object of a conversion" and "to the extent the conversion claim encompasses a claim for misappropriation of trade secrets, such a claim is preempted by the FUTSA"). Plaintiff's conversion claim is premised entirely on the alleged misappropriation of information and diversion of business relationships, neither of which is a proper subject of conversion under Florida law.

Plaintiff's Unjust Enrichment claim in Count VI fares no better. Plaintiff does not allege what benefit was unjustly conferred by Plaintiff on ***Frost Buddy***, again lumping it into general allegations against "Defendants" as a collective unit, which fails to give sufficient notice as required by Rule 8. This deficiency is fatal: under Florida law, unjust enrichment requires that the plaintiff confer a *direct* benefit on the defendant. *See IberiaBank v. Coconut 41, LLC*, 984 F. Supp. 2d 1283, 1290 (M.D. Fla. 2013). Furthermore, and dispositive on this Motion, "[b]ecause FUTSA expressly authorizes a plaintiff to recover the 'unjust enrichment caused by misappropriation' a claim for unjust enrichment is indistinguishable from the remedy under the statute and therefore is preempted." *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 910 (M.D. Fla. 2007).

Because all Plaintiff has alleged in these state law claims are the same collective factual allegations found in the improper shotgun pleading, this Court should decline to take supplemental jurisdiction pursuant to 28 U.S.C. § 1367, even if these state law claims are not preempted.

## IV. CONCLUSION

**WHEREFORE**, Defendant FROST BUDDY LLC respectfully requests the Court enter an Order dismissing with prejudice all claims in the First Amended Complaint asserted against Frost Buddy pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), 12(b)(3), and 12(b)(6), and granting such other and further relief as the Court deems just and proper.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Undersigned counsel hereby certifies, pursuant to Local Rule 7.1(a)(3), that counsel for Defendant Frost Buddy LLC conferred with counsel for Plaintiff in a good faith effort to resolve the issues raised in this Motion via email dated August 11, 2026, and by videoconference on August 12 at 2:00 P.M. Eastern, including dismissal of Count I for lack of standing under Rule 12(b)(1) and dismissal of the entire action for improper venue under Rule 12(b)(3), and inviting Plaintiff to withdraw or dismiss all or part of the First Amended Complaint. Plaintiff's counsel, Adam Wolek and Clarissa Sullivan, did not agree to dismiss Count I for lack of standing or that the action should be dismissed for improper venue or for any other reason. The parties were unable to resolve or narrow these issues by agreement.

Dated: August 13, 2026

Respectfully submitted,

By: **s/ Aleksey Shtivelman**

Aleksey Shtivelman
Florida Bar No. 99159
ashtivelman@shutts.com
SHUTTS & BOWEN LLP
200 S. Biscayne Boulevard,
Suite 4100
Miami, Florida 33133
Tel.: (305) 379-9135

and

Michael J. Hickey
*Admitted Pro Hac Vice*
Bridget Hoy
*Admitted Pro Hac Vice*
LEWIS RICE LLC
600 Washington Avenue,
Suite 2500
St. Louis, MO 63101
Tel.: (314) 444-7600
mhickey@lewisrice.com
bhoy@lewisrice.com

*Attorneys for Defendant*
*Frost Buddy LLC*