**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | | |
|---|---|---|
| GRILL RESCUE LLC d/b/a RESCUE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 9:26-cv-80481-DMM |
| v. | ) | |
| | ) | |
| SHENZHEN REEKOOS HOUSEWARE CO. LTD; WEILIANG GU; and FROST BUDDY LLC | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF GRILL RESCUE LLC'S RESPONSE IN OPPOSITION TO DEFENDANT FROST BUDDY LLC'S MOTION TO DISMISS FIRST AMENDED VERIFIED COMPLAINT**

Plaintiff Grill Rescue LLC opposes Defendant Frost Buddy LLC's ("Frost Buddy")[1] Motion to Dismiss the First Amended Verified Complaint ("Motion"), and states as follows:

## INTRODUCTION

Plaintiff's First Amended Verified Complaint ("FAC") puts Frost Buddy on notice with detailed allegations of trade secret misappropriation and intellectual property conversion—now used in Frost Buddy's competing product. Frost Buddy's Motion throws everything at the wall, but nothing sticks. The FAC is not a shotgun pleading: it provides count-specific allegations identifying each defendant's conduct, including Frost Buddy's. Venue is proper because this District is where the NDA was negotiated and executed, where confidential information was shared and misappropriated, where competing products are sold using the misappropriated technology, and where Plaintiff suffered its injuries. Indeed, Frost Buddy's own CEO and co-owner—who used the misappropriated information for Frost Buddy's competing product and claimed credit for the invention—lives and operates from Florida. Plaintiff has standing because it invented the product at issue, holds an expected ownership interest in the IP, and has suffered financial and reputational harm from Frost Buddy's wrongful patent claims. And Plaintiff's state-law claims are not preempted—they rest on independent facts, require different elements, seek different relief, and may be pled in the alternative. The Motion should be denied.

## FACTUAL BACKGROUND

### I. BACKGROUND OF PLAINTIFF'S BUSINESS AND PRODUCTS

Plaintiff manufactures and sells innovative consumer products in the outdoor industry, including Beer Buddy and Tumbler Buddy. FAC ¶ 29. Tumbler Buddy is the world's first tumbler converter—an insert that fits into most standard 20 oz tumblers, allowing them to hold beverage

---

[1] Only Frost Buddy filed the Motion, so "Defendants" shall indicate all named defendants.

containers of various sizes, including bottles, cans, skinny cans, stubby bottles, and 16 oz cans. *Id.* ¶ 30. Beer Buddy is a beverage holder/cooler designed as a universal solution for the increased use of differently sized cans and bottles. *Id.* ¶ 31. Plaintiff sold these products direct-to-consumer through its website and online marketplaces like Amazon. *Id.* ¶ 32. Plaintiff vigorously protects this proprietary technology: it requires NDAs from product manufacturers and business partners, and restricts access to confidential product designs, engineering drawings, manufacturing specifications, and technical data to necessary personnel only. *Id.* ¶ 38.

## II. PLAINTIFF SHARES CONFIDENTIAL INFORMATION WITH DEFENDANTS GU AND SHENZHEN REEKOOS UNDER PROTECTION OF AN NDA

In 2020, Plaintiff established a relationship with product component manufacturer Defendant Gu, who was then associating with a new company, Defendant Shenzhen Reekoos. FAC ¶ 33. After Gu and Shenzhen Reekoos executed an NDA with Plaintiff on May 15, 2020, Plaintiff disclosed confidential information and trade secrets, including technical data, product ideas, designs, drawings, specifications, plans, business process information, and other business or technical data (the "Confidential Information"). *Id.* ¶¶ 34-35, 40.

The NDA defines Confidential Information to include (1) all information in Plaintiff's possession not generally known to the public or the relevant trade or industry that was communicated to Recipient, and (2) all information learned, discovered, developed, conceived, originated, or prepared by Recipient in the course of its relationship with Grill Rescue. FAC ¶ 41. Beyond the NDA, Plaintiff took additional measures to protect this information. *See id.* ¶ 38.

After signing the NDA, and over the next few years, Plaintiff shared its Confidential Information and trade secrets with Shenzhen Reekoos and Gu—the very information required to design, manufacture, and modify its innovative consumer products, including Beer Buddy and Tumbler Buddy. *Id.* ¶ 49. On June 1, 2021—just over a year after the NDA's execution—Shenzhen

Reekoos filed a patent application for a "Multi-Function Fixing Kit," U.S. Patent Application No. 17/335,183 (the "'183 Application"), without Plaintiff's knowledge. *Id.* ¶ 51. The '183 Application's product concept and information derived from Plaintiff's Confidential Information. *Id.* ¶ 52. In late April/early May 2023, Plaintiff discovered Defendants' misappropriation and NDA breach when it sought to file its own patents for a multifunctioning beverage cooler. *Id.* ¶ 56. In May 2023, Mr. Mobley demanded that Gu assign the '183 Application to Plaintiff as the rightful inventors. *Id.* ¶ 58. Gu agreed to do so if the patent application succeeded. *Id.* ¶ 59.

On December 19, 2023, U.S. Patent No. 11,844,449 ("Multi-Function Fixing Kit") (the "'449 Patent") issued from the '183 Application. The '449 Patent, the '183 Application, and any application or patent claiming priority thereto are collectively the "Multi-Function Fixing Kit Patents." *Id.* ¶ 62. On September 17, 2021, Defendants Shenzhen Reekoos and Gu filed Chinese Patent Application No. CN202122259581.9U; on February 1, 2022, Chinese Patent CN215708687U issued. *Id.* ¶ 66. Plaintiff believes this Chinese application and patent also derive from its Confidential Information. *Id.* ¶ 65.

## III. FROST BUDDY USES AND BENEFITS FROM PLAINTIFF'S CONFIDENTIAL INFORMATION

After Gu executed the NDA, Defendants Shenzhen Reekoos and Gu began working with Plaintiff's direct competitor, Frost Buddy, LLC. FAC ¶ 69. Less than five months after filing the '183 Application, Frost Buddy filed U.S. Patent Application No. 17/514,310 for an "Insulating Beverage Container" on October 29, 2021, listing as inventors Defendant Gu and his associate Rui Cao (the "'310 Application"). *Id.* ¶¶ 72-73. Like the '183 Application and '449 Patent, the '310 Application named Gu as inventor and addressed the same problem—insulating beverage containers that accommodate only a single size can or bottle—using a similar solution: a multi-layered or stepped internal structure with decreasing diameters to support different sized

containers. *Id.* ¶ 73. On July 11, 2023, U.S. Patent No. 11,697,544 ("Insulating Beverage Container") (the "'544 Patent") issued from the '310 Application, listing Gu and Rui Cao as inventors and Frost Buddy as assignee. Additional related applications and patents followed, collectively "the Insulating Beverage Container Patents." *Id.* ¶¶ 75-80.

Despite Gu's promise to assign the Multi-Function Fixing Kit Patents and/or the '183 Application to Plaintiff, he never did. Instead, Defendants sought to add inventors to these patents. On March 25, 2025, the USPTO entered a Certificate of Correction revising the named inventor on the '449 Patent from Gu alone to Gu and Frost Buddy co-founders Mitch Mammoser and Brock Mammoser. *Id.* ¶¶ 85-86.

As a result of Defendants' wrongful conduct, Plaintiff's business and reputation has been—and will continue to be—irreparably harmed.

## LEGAL STANDARD

"A plaintiff must plead only sufficient facts to state a claim for relief that is plausible on its face." *Incarcerated Ent., LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1226 (M.D. Fla. 2017) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-62 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a Rule 12(b)(6) motion tests if the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotation marks omitted); *TracFone Wireless, Inc. v. GSM Grp., Inc.*, 555 F. Supp. 2d 1331, 1335 (S.D. Fla. 2008) (in ruling on Rule 12(b)(6) motion to dismiss, "the issue is not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.") (cleaned up). "The threshold for surviving a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is a low one." *Incarcerated Ent.*, 261 F. Supp. 3d at 1226 (citing *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 995 (11th Cir. 1983)). Additionally, Fed. R. Civ. P. 8(a)(2) "requires only a short and plain statement of the

claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted). To meet the notice pleading requirement, that statement must contain factual allegations which are "enough to raise a right to relief above the speculative level." *Id.* at 545.

## ARGUMENT

This Court should deny Frost Buddy's Motion. *First*, the FAC is not a shotgun pleading—it provides count-specific allegations identifying each defendant's conduct, including Frost Buddy's. *Second*, venue is proper in this District because the NDA was negotiated and executed here, confidential information was shared and misappropriated here, competing products using that information are sold here, and Plaintiff suffered its injuries here—and Frost Buddy's own CEO lives and operates from Florida. *Third*, Plaintiff has standing to pursue its inventorship and ownership claims under Section 256 because it invented the product at issue, holds an expected ownership interest in the IP, and has suffered concrete financial and reputational harm. *Fourth*, Plaintiff has adequately alleged trade secret misappropriation under both federal and state law. And *finally*, Plaintiff's state-law claims are not preempted—they rest on independent allegations, require different elements, seek different relief, and may be pled in the alternative.

## I. THE FIRST AMENDED COMPLAINT IS NOT A SHOTGUN PLEADING

The FAC contains detailed descriptions of the factual background of this case and more than sufficient allegations to give Frost Buddy notice of each of Plaintiff's claims. A complaint is not a "shotgun pleading" so long as it "adequately put[s] [defendants] on notice of the specific claims against them and the factual allegations that support those claims." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1325 (11th Cir. 2015). The key inquiry is whether the "failure to more precisely parcel out and identify the facts relevant to each claim materially increase[s] the burden of understanding the factual allegations underlying each count." *Id.* at 1324. Other courts

in this Circuit have found the same. *See, e.g.*, *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 407 F. Supp. 3d 1216, 1236 (N.D. Ala. 2019) ("Although the statement incorporating all previous paragraphs by reference is a poor—albeit extremely common—practice, that fact alone is insufficient to make a complaint a shotgun pleading when the plaintiff does re-allege appropriate specific facts in each count."); *Cajun Steamer Ventures, LLC v. Thompson*, 402 F. Supp. 3d 1328, 1337 (N.D. Ala. 2019) (complaint incorporated "all previous paragraphs as if fully stated herein" before each count and was not a "shotgun pleading" as it alleged "sufficient individual facts in each count to inform [defendant] of which facts would be used in support of which count.").

Here, each claim adds count-specific facts and remedies and identifies the Defendant or Defendants whose conduct is alleged to support it. Specifically:

- **Count I** seeks declaratory relief concerning identified patent assets—including the '449, '544, '333, and '663 Patents, the related applications, and the Chinese patent—and alleges the specific inventorship errors, including the omission of Scott Mobley and Anthony Tranchida and the improper designation of Defendants;
- **Count II** is expressly pleaded only against Shenzhen Reekoos and Gu and alleges their breach of the NDA;
- **Counts III and IV** identify Plaintiff's specific Confidential Information and trade secrets—including product designs, nested and multi-level structures, engineering drawings, specifications, molds, manufacturing processes, and quality-control protocols—and allege misappropriation by all Defendants while distinguishing Reekoos and Gu's disclosure and Frost Buddy's acquisition, use, and sale of competing products;
- **Count V** separately alleges that Frost Buddy's manufacture, marketing, and sale of competing products disrupted Plaintiff's identifiable customer and distribution

relationships;

- **Count VI** identifies the benefits Defendants retained, including patent assets, increased sales and market share, enhanced relationships and reputation, and possession of Plaintiff's information without compensation; and
- **Count VII** alleges wrongful dominion over identified patent assets and other property.

Beyond the allegations also included in each count, the FAC further uses sub-headings and identifies Frost Buddy's specific conduct—filing patent applications naming Gu as an inventor, seeking correction of inventorship to add its co-founders, and manufacturing competing products—while distinguishing what each Defendant did. Thus, even with the incorporation of the preceding summary paragraphs, the factual allegations make it clear for a party to decipher which allegations correspond to the preceding counts.

The case law cited by Frost Buddy is not on point. For example, Frost Buddy's reliance on *Weiland* is misplaced as that case held that "these two counts are informative enough to permit a court to readily determine if they state a claim upon which relief can be granted," reversing the district court. *Weiland*, 792 F.3d at 1325-26. Indeed, the Eleventh Circuit reasoned that despite the disputed counts incorporating each preceding paragraph, "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each account." *Id.* at 1324 (noting that "[t]his may explain why the defendants did not move for a more definite statement under Federal Rule of Civil Procedure 12(e) or otherwise assert that they were having difficulty knowing what they were alleged to have done."). Here, the FAC goes even further than *Weiland* because each count identifies the specific paragraphs it incorporates and sets forth its own distinct allegations.

## II. VENUE IS PROPER IN THE SOUTHERN DISTRICT OF FLORIDA

Venue in this District is proper under 28 U.S.C. § 1391(b)(2), which permits suit in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."[2] Here, the key and substantial parts of the relevant events occurred in this District: Plaintiff developed and maintained its Confidential Information here; the NDA was negotiated, drafted, and transmitted from here; Shenzhen Reekoos and Gu approached Plaintiff here to establish their business relationship and gained access to Plaintiff's proprietary information here; and Plaintiff suffered the resulting injuries—including lost sales, lost market share, and loss of competitive advantage—in this District. FAC ¶¶ 24, 26-27. Frost Buddy also sells competing products derived from Plaintiff's Confidential Information and trade secrets to consumers in this District through its website and Amazon, and the FAC alleges that those products displaced Plaintiff's sales and generated revenue from Florida customers. *Id.* ¶¶ 18, 26-27. And Frost Buddy's cofounder, CEO, and owner, Brock Mammoser, is a Florida citizen. *See* Doc. 18.

Frost Buddy's cited law is distinguishable. In *Jenkins*, the court found that only plaintiff-side effects were felt in the district. *See Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-73 (11th Cir. 2003). But as discussed, both parties' relevant conduct took place within or has a direct nexus to this District. *Waste Pro USA, Inc. v. Adams Sanitation Holding Co.* is likewise distinguishable because there the only asserted basis for venue there was hypothetical website sales, whereas here Plaintiff alleges specific harm from competing products derived from its misappropriated information. *See* 2022 WL 19842681 (M.D. Fla. July 18, 2022). *M Tobacos* is also inapplicable as it involved trademark infringement claims where the Plaintiff had failed to include any allegations

[2] Independently, 28 U.S.C. § 1391(c)(3) supports venue as to Shenzhen Reekoos and Gu because they are not residents of the United States and may be sued in any judicial district.

connecting the conduct and harm to plaintiff's chosen district. *M Tobacos, Inc. v. Case*, No. 14-cv-81481, 2015 WL 11438107, at *2 (S.D. Fla. Apr. 17, 2015) (Middlebrooks, J.). Here, Defendants' actions have directly impacted Plaintiff's business, and the FAC is flush with facts connecting Defendants and their conduct to this District.

Finally, the contractual forum factor does not displace these facts; the NDA and the Florida-centered relationship connect the challenged disclosures and resulting injuries to this forum. These facts resemble *Mobile Diagnostic Imaging, Inc. v. Gormezano*, No. 12-60888-CIV, 2012 WL 3244664, at *3 (S.D. Fla. Aug. 9, 2012), where substantial events occurred in this District because the plaintiff was a Florida company, the agreement was negotiated in Florida, communications created the relationship, the defendant obtained access to trade-secret information in Florida, and the plaintiff was damaged there. The same analysis should apply here.

Accordingly, venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b)(2), and independently as to Shenzhen Reekoos and Gu under § 1391(c)(3).

## III. PLAINTIFF HAS STANDING TO PURSUE CORRECTION OF INVENTORSHIP AND OWNERSHIP CLAIMS

Frost Buddy's standing argument misses the mark. Plaintiff's claims arise under 35 U.S.C. § 256, which permits correction of inventorship "[w]henever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent." To have standing under Section 256, a party must assert either expected ownership rights in the patent or a "concrete financial interest in the patent, albeit an interest less than ownership." *Chou v. Univ. of Chi.*, 254 F.3d 1347, 1358-59 (Fed. Cir. 2001). Section 256 "imposes no requirement of potential ownership in the patent on those seeking to invoke it," and the Federal Circuit has "interpreted § 256 broadly as a savings provision to prevent patent rights from being extinguished simply because the inventors are not correctly listed." *Id.* at 1358.

"In addition to putative inventors, a 'patentee or its assignee' may state a claim under section 256 'even when there is no consensus on the correct inventorship as long as all parties are given notice and an opportunity to be heard.'" *Armor Screen Corp. v. Storm Catcher, Inc.*, No. 07-81091, 2008 WL 5746938, at *10 (S.D. Fla. Nov. 10, 2008) (quoting *Fina Oil & Chemical Co. v. Ewen*, 123 F.3d 1466, 1471 (Fed. Cir. 1997)). Plaintiff alleges that its employees are co-inventors of the patents at issue, that those employees routinely assigned their patent rights to Plaintiff in the normal course of employment, and that Plaintiff has an expected ownership interest. FAC ¶¶ 6, 48, 73, 74. Plaintiff also alleges it shared Confidential Information with Defendants Gu and Shenzhen Reekoos after executing an NDA in May 2020, providing specific detail on the contract's requirements and how Defendants violated them. *Id.* ¶¶ 39-42, Ex. A. Taken as true—as they must be on a motion to dismiss—these allegations more than satisfy constitutional standing for a Section 256 claim.

Furthermore, Plaintiff has sufficiently alleged that its putative employee-inventors (Mr. Mobley and Mr. Tranchida) routinely assigned their interests in patent assets developed as employees to Plaintiff. *Id.* ¶ 48. "Where an employee has assigned his patent rights to his employer, it is clear that the omission of the employee from the patent injured the employer by depriving it of an ownership interest or financial stake in the patent, and that the injury will be redressed by correction of inventorship." *Informatics Applications Grp., Inc. v. Shkolnikov*, No. 1:11cv726, 2011 WL 4804870, at *5 (E.D. Va. Oct. 11, 2011).

Frost Buddy's reliance on *Armor Screen Corp. v. Storm Catcher, Inc.*, No. 07-81091, 2008 WL 5746938 (S.D. Fla. Nov. 10, 2008), is misplaced. There, defendants filed a motion to correct inventorship on behalf of a non-party approximately six months into litigation. The court found defendants lacked standing because no defendant was a putative inventor and the nonparty had not

assigned ownership rights in the patent to defendants at filing. *Id.* at *10. Here, by contrast, Plaintiff asserts an ownership interest and a concrete financial interest as anticipated assignee of any patent rights arising from the sharing of its Confidential Information and trade secrets under the NDA—rights that Defendant Gu directly acknowledged. The technology disclosed in the patents was invented by Plaintiff's employees; Defendants took that research and technology (disclosed under the NDA) and improperly claimed the patents for themselves. When discovered, Defendants Gu and Shenzhen Reekoos said there would be "no problem" to transfer the patent rights to Plaintiff and expressed a desire to "keep our cooperation and transfer." FAC ¶¶ 59-60, 112. They then reneged. Plaintiff's expected ownership rights and concrete financial interest alone confer standing.

Frost Buddy's argument that Plaintiff's claim fails because Plaintiff did not attach a written assignment to its Amended Complaint falls flat. Many assignment documents between Mr. Mobley, Mr. Tranchida, and Plaintiff are publicly available and maintained by the USPTO. *See, e.g.*, U.S. Patent No. D945,729; U.S. Patent Appl. No. 17/825,794; U.S. Patent Appl. No. 17/830,748. And Plaintiff need not prove its claims at the pleading stage. *See, e.g.*, *Nw. Univ. v. PanaceaNano, Inc.*, No. 20-5729, 2021 WL 4401442, at *6 (N.D. Ill. Sept. 27, 2021) ("It is true that an inventorship claim must be proven by clear and convincing evidence. However, a Rule 12(b)(6) motion tests the complaint's sufficiency under the federal pleading standards applicable to a complaint filed before any discovery has been taken."). As discussed, Plaintiff has provided sufficient factual allegations, and taken as true, they survive this Motion. Regardless, Plaintiff has alleged that its reputation has been damaged by Defendants' conduct (FAC ¶ 110)—sufficient to confer Article III standing. *See, e.g.*, *Krauser v. Evollution IP Holdings, Inc.*, 975 F.Supp.2d 1247, 1261 (S.D. Fla. 2013) ("an erroneous patent application is *itself* an injury to [movant's] reputation

sufficient to confer Article III standing.") (emphasis in original); *see also Chou*, 254 F.3d at 1359.

Finally, Frost Buddy argues the Court lacks jurisdiction over Plaintiff's claims concerning "Unauthorized Patent Assets"—four pending U.S. applications, a foreign application, and a Chinese patent. Mot. at 13 (citing FAC ¶ 106). Not so. In *Chou*, the Federal Circuit held that the putative inventor had standing to challenge inventorship of pending foreign patent applications. *See* 254 F.3d at 1360 ("Chou claims entitlement to be named as an inventor on the foreign patent applications as well. Since inventorship on such applications normally follows the inventorship designation in the originating country, the district court, if it concludes on remand that Chou is properly an inventor of the disputed subject matter, can instruct the University to take appropriate action to change the inventorship designation on the foreign patent applications."). This Court therefore has jurisdiction to order the presently named patent application owners and assignees to correct inventorship.

## IV. THE FACTS SUFFICIENTLY ALLEGE TRADE SECRETS AND MISAPPROPRIATION

Plaintiff has plausibly alleged trade secret misappropriation under both the Defend Trade Secrets Act (18 U.S.C. § 1836) ("DTSA") and Florida Uniform Trade Secrets Act (Fla. Stat. §§ 688.001-009) ("FUTSA"). Under the DTSA, a plaintiff "must plausibly allege that it (i) possessed information of independent economic value that (a) was lawfully owned by the plaintiff and (b) for which the plaintiff took reasonable measures to keep secret, and (ii) the defendant used and/or disclosed that information, despite (iii) a duty to maintain its secrecy." *Sentry Data Systems, Inc. v. CVS Health*, 361 F.Supp.3d 1279, 1293 (S.D. Fla. 2018) (citations and quotations omitted). Similarly, "[t]o prevail on a FUTSA claim, a plaintiff must demonstrate that (1) it possessed a 'trade secret' and (2) the secret was misappropriated." *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018) (citations omitted). Although a "plaintiff is required to

identify with reasonable particularity the trade secrets at issue before proceeding with discovery ... to satisfy this requirement at the dismissal stage in federal court, the plaintiff need only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret." *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016).

Here, Plaintiff has adequately alleged that its trade secrets were part of the proprietary and confidential information shared with Defendants Gu and Shenzhen Reekoos under the NDA. The shared confidential and trade secret information included "technical data, product ideas, designs, drawings, specifications, plans, information about its business processes, or other business or technical data…which were conceived and developed at Plaintiff's great effort and expense." FAC ¶ 35. Defendants Gu and Shenzhen Reekoos knew about the information shared under the NDA. They thereafter disclosed Plaintiff's Confidential Information as part of the '183 Application—including to Defendant Frost Buddy LLC's cofounders and senior executives, who are named co-inventors and thus must have had knowledge of Plaintiff's Confidential Information at the time of filing.

Frost Buddy protests that Plaintiff provided only "passing references to beverage tumbler and cooler 'designs and concepts,'" including "'a nested internal structure, multi-level geometry, adjustable support, diameter-based positioning, and removable/modular components to accommodate different beverage sizes' and the broad categories of 'engineering drawings, dimensional tolerances, material specifications, molds, manufacturing process specifications, and quality control protocols.'" Mot. at 15-16 (citing FAC ¶¶ 7, 35, 41, 71, 83, 84, 92, 93, and 107). But numerous cited paragraphs include sufficient factual detail regarding Plaintiff's trade secrets. For example, FAC ¶ 83 alleges:

> Both the Multi-Function Fixing Kit Patents and the Insulating Beverage Container Patents include a nested internal structure, multi-level geometry, adjustable support, diameter based positioning, and removable/modular components to accommodate different beverage sizes, which designs and concepts were all disclosed in confidence by Mr. Mobley in conversations with Gu during the course of Plaintiff's business relationship with Shenzhen Reekoos and Gu and subject to the provisions of the NDA.

Furthermore, Plaintiff alleges that Defendants themselves requested the USPTO change the inventorship of the '449 Patent (issued from the '183 Application) to include Defendant Frost Buddy LLC's cofounders and senior executives (FAC ¶¶ 85-86)—plausibly indicating these individuals had knowledge of Plaintiff's Confidential Information at the time of the '183 Application filing. It cannot be that Frost Buddy's cofounders and senior executives had sufficient involvement in the conception and reduction to practice of the claimed invention (which Plaintiff plausibly alleges derived directly from its Confidential Information) to qualify for inventorship on the '449 Patent, yet had no knowledge of Plaintiff's Confidential Information from Defendants Gu and Shenzhen Reekoos.

Frost Buddy's cited caselaw is inapposite. In *Source One Fin. Servs., LLC v. Corpodian*, No. 0:23-cv-61794, 2024 WL 4441804, at *3 (S.D. Fla. Oct. 8, 2024), plaintiffs failed to allege "when, how, or in what manner [Defendant A] used or disclosed the alleged trade secrets" and failed to provide "factual allegations linking [Defendant A's] conduct to instances of misappropriation by [Defendant B]—including the acquisition, use, or disclosure of the information." Indeed, the "only allegations against [Defendant A] are that [Defendant A] employed [Defendant B] after [p]laintiffs terminated her." *Id.* at *4. Here, by contrast, Plaintiff specifically alleges that Defendants Gu and Shenzhen Reekoos misappropriated Plaintiff's Confidential Information and improperly disclosed it in numerous patent applications filed domestically and abroad, and worked with Frost Buddy on the same inventions and products. FAC ¶¶ 72-80. Many of these applications listed Frost Buddy as assignee at filing; Plaintiff also alleges

that the correction of inventorship on the ’183 Application plausibly indicates all Defendants’ knowledge and misuse of Plaintiff’s Confidential Information. The rest of Frost Buddy’s cited law is equally inapplicable. *See, e.g., AccessNinja, Inc. v. PassNinja, Inc.*, No. 24-cv-24745, 2025 WL 753332, *6 (S.D. Fla. Mar. 10, 2025) (finding “the Complaint lacks sufficient allegations that AccessNinja took ‘any measures, let alone reasonable measures, to protect [AccessNinja's] trade secrets vis-à-vis Defendants.’”). Plaintiff took extensive measures to protect its confidential information, including the NDAs signed by Defendants. *See supra;* FAC Ex. A.

Plaintiff’s allegations thus provide adequate specificity regarding the trade secrets at issue and adequate pleading of reasonable measures to maintain confidentiality. *See Sentry Data Systems*, 361 F.Supp.3d at 1294. Frost Buddy’s Motion should be denied as to Counts III and IV.

## V. PLAINTIFF’S REMAINING CLAIMS ARE NOT PREEMPTED.

Frost Buddy’s motion to dismiss Counts V (Tortious Interference), VI (Unjust Enrichment), and VII (Conversion) rests on the flawed premise that Plaintiff’s state-law claims are merely derivative of its trade secret claims. Not so. The FAC alleges materially distinct wrongs—such as the distinction between retention of trade secrets and acquisition of patent rights (*see* FAC ¶¶ 166, 167)—that survive both FUTSA preemption and Rule 8 scrutiny. Frost Buddy’s invitation to decline supplemental jurisdiction is premature: Plaintiff’s federal claims remain viable, and the state-law claims arise from a common nucleus of operative fact.[3] Moreover, these claims may be pled in the alternative, and if a fact finder ultimately determines the information does not rise to

---

[3] In making these arguments, Defendants again contend that Plaintiff’s incorporation by reference makes the FAC deficient. But incorporation by reference of prior allegations is expressly authorized by the Federal Rules and is standard practice in multi-count complaints. *S*ee Fed. R. Civ. P. 10(c). Only where the structure of a complaint makes it “virtually impossible to know which allegations of fact are intended to support which claim(s) for relief” is the pleading deficient. *Weiland v. Palm Beach Cnty. Sheriff’s Off*., 792 F.3d 1313, 1325 (11th Cir. 2015). As addressed above, no such deficiency exists here.

the level of a trade secret—a factual question inappropriate for resolution on a Rule 12(b)(6) motion—the state-law claims would not be preempted at all.

### A. Count V (Tortious Interference) Is Materially Distinct from Plaintiff's Trade Secret Claims and Therefore Not Preempted.

The FUTSA displaces "conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret," but does not affect "civil remedies that are not based upon misappropriation of a trade secret." Fla. Stat. § 688.008. The operative question is "whether allegations of trade secret misappropriation alone comprise the underlying wrong; if so, the cause of action is barred by § 688.008." *Veritas Legal Plan, Inc. v. Freedom Legal Plans, LLC*, No. 22-80925-CV, 2022 WL 23025404, at *7 (S.D. Fla. Dec. 22, 2022) (Middlebrooks, J.) (finding tortious interference allegations "sufficiently distinct ... such that preemption is not warranted."). When state-law claims contain material distinctions, they survive preemption. *Id.*; *see also Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1180-81 (M.D. Fla. 2005).

Count V alleges materially distinct conduct and is not preempted. The FAC alleges that Frost Buddy's interference with Plaintiff's business relationships is "independent of, and separate from, Defendants' misappropriation of Plaintiff's Confidential Information and trade secrets." FAC ¶ 155. Count V targets customers who chose "to purchase Frost Buddy's competing products instead of Plaintiff's products, thereby disrupting Plaintiff's actual and identifiable business relationships and diverting sales and revenue away from Plaintiff to Frost Buddy." *Id.*; *see also id.* ¶ 157 ("Defendants intentionally, and without justification, interfered with Plaintiff's business relationships…"). These are not mere allegations that Frost Buddy used trade secrets—they allege the deliberate targeting of Plaintiff's customers and sales channels to divert revenue. *See Veritas Legal Plan*, 2022 WL 23025404, at *7 ("basis of the tortious interference claim is not simply that

Defendants misappropriated Plaintiff's trade secrets, but rather that Defendants used those stolen secrets to interfere with Plaintiff's relationships with affiliates and customers"). Frost Buddy's reliance on *Phosphorus Free Water Solutions, LLC v. Ferrate Solutions, Inc.*, No. 6:21-cv-1959, 2022 WL 22987308 (M.D. Fla. Sept. 1, 2022), is unavailing. There, plaintiff's only basis for interference was the misappropriation itself. Here, as in *Veritas Legal Plan*, the tortious interference claim rests on independent conduct, so preemption is not warranted.

Plaintiff has also identified specific business relationships with sufficient particularity to satisfy the pleading requirements under Florida law. Plaintiff identified "specific identifiable business relationships with retailers and distribution channels for its Beer Buddy, Tumbler Buddy, and other products, including its direct-to-consumer sales channel through its website and its sales through online marketplaces such as Amazon, through which Plaintiff has developed an established customer base and sales history for its products" of which "Defendants are aware." FAC ¶¶ 154-55. Florida law does not require Plaintiff to identify each customer by name. *See E-Z Pack Mfg., LLC v. RDK Truck Sales & Serv., Inc.*, No. 8:10-CV-1870-T-27AEP, 2011 WL 4343790, at *10 (M.D. Fla. Aug. 10, 2011), *report and recomm'n adopted*, No. 8:10-CV-1870-T-27AEP, 2011 WL 3841631 (M.D. Fla. Aug. 30, 2011) (finding sufficient allegations that business relationships involved "several customers throughout the Southeastern United States").

### B. Count VII (Conversion) Is Not Preempted Because It Alleges Wrongful Dominion over Plaintiff's Patent Assets

A conversion claim relating to items or information not designated as trade secrets survives preemption. *See Pelfrey v. Mahaffy*, No. 17-CV-80920, 2018 WL 3110797, at *3 (S.D. Fla. Feb. 7, 2018) (Middlebrooks, J.) (citing *Penalty Kick Mgmt. Ltd. v. Coca-Cola Co.*, 318 F.3d 1284, 1289 (11th Cir. 2003)). Here, the FAC alleges Frost Buddy exercised wrongful dominion over Plaintiff's patent assets by "participating in the correction of the '449 Patent to add its co-founders,

Brock Mammoser and Mitch Mammoser, as named inventors on a patent derived from Plaintiff's proprietary information" and "applying for and obtaining the '544, '333, and '663 Patents, based on Plaintiff's Confidential Information, proprietary product designs and inventions." FAC ¶ 176. The Florida Supreme Court recognizes that a "patent is a species of property" for which conversion is a remedy. *See Jacobs Wind Elec. Co. v. Dep't of Transp.*, 626 So. 2d 1333, 1337 (Fla. 1993). Frost Buddy's assertion of ownership over Plaintiff's patents is wrongful dominion over identified property assets—distinct from trade secret misappropriation.

### C. Count VI (Unjust Enrichment) Is Adequately Pled and Relies on Allegations Distinct from Trade Secret Claims

Frost Buddy incorrectly argues Plaintiff has not alleged what benefit was conferred. Rule 8 requires only a short and plain statement of claims; Plaintiff need not allege every supporting fact at this stage. Fed. R. Civ. P. 8. Even so, the FAC alleges that "Plaintiff conferred a benefit upon Defendants in the provision of its Confidential Information and trade secrets, which Defendants had knowledge of, and Defendants retained and unlawfully utilized and disclosed the information under circumstances such that it would be inequitable for Defendants to retain the benefit without paying fair value for it." FAC ¶ 165.

The FAC further identifies specific benefits retained, including "(i) the issuance of patents and patent asserts for which Plaintiff is the rightful owner, (ii) allowing Defendants to maintain and increase their own sales, market share, and pricing power, to Plaintiff's unjustifiable detriment..., (iii) the preservation and enhancement of Defendants' commercial relationships and reputation at the expense of Plaintiff's business and goodwill, and (iv) the unauthorized possession and maintenance of Plaintiff's Confidential Information and trade secrets developed at Plaintiff's great effort and expenses without having paid Plaintiff any compensation for the same." *Id.* ¶ 167.

Frost Buddy was a central participant in the other defendants' actions, and it can reasonably

be inferred that Frost Buddy was unjustly enriched alongside them. *See Metrahealth Ins. Co. v. Anclote Psychiatric Hosp., Ltd.*, No. 96-2547-CIV-T-17C, 1997 WL 728084, at *8 (M.D. Fla. Oct. 23, 1997) (denying motion to dismiss unjust enrichment claim where reasonable inference defendant incurred a benefit from the conduct). Like the defendant in *Metrahealth*, Frost Buddy claims an ownership and commercial stake in the property at issue (here, the patents) and the competing product line derived from Plaintiff's proprietary designs. FAC ¶¶ 74, 87-93.

Frost Buddy also argues Plaintiff's unjust enrichment claim is indistinguishable from the statutory remedy. Its reliance on *New Lenox Industries, Inc. v. Fenton*, 510 F. Supp. 2d 893, 910 (M.D. Fla. 2007), is inapposite—the plaintiff there conceded preemption, and the court accepted that concession without analyzing whether the claim alleged facts distinct from the trade secret count. Plaintiff here makes no such concession. And the FAC alleges benefits distinct from mere retention of trade secrets: acquisition of patent assets rightfully belonging to Plaintiff, increased sales and market share, enhanced commercial relationships, and income from improperly obtaining and using Plaintiff's confidential information. FAC ¶¶ 165, 167. Plaintiff's unjust enrichment claim encompasses benefits beyond what statutory remedies provide, so it is not preempted. Finally, whether information rises to the level of a trade secret—and thus whether FUTSA preempts a related tort—is a factual question inappropriate for resolution on a Rule 12(b)(6) motion. *See Delray Recovery Ctr., LLC v. Palm Partners, LLC*, No. 11-81281-CIV, 2012 WL 12855462, at *3 (S.D. Fla. Mar. 16, 2012).

## **CONCLUSION**

For the reasons above, Plaintiff respectfully asks the Court to deny Frost Buddy's Motion.

Dated: August 27, 2026

FOX ROTHSCHILD LLP

*/s/Adam Wolek*
Adam Wolek (Fla. Bar No. 1033265)
Fox Rothschild LLP
777 South Flagler Drive
Suite 1700, West Tower
West Palm Beach, FL 33401
Phone: (561) 835-9600
Fax: (561) 835-9602
awolek@foxrothschild.com

*Attorneys for Plaintiff*
*Grill Rescue LLC d/b/a Rescue LLC*

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

GRILL RESCUE LLC d/b/a RESCUE LLC,

Plaintiff,

v.

SHENZHEN REEKOOS HOUSEWARE CO. LTD; WEILIANG GU; and FROST BUDDY LLC

Defendants.

Case No. 9:26-cv-80481-DMM

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means.

By: *\/s/Adam Wolek*
Adam Wolek