**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 26-80481-CV-MIDDLEBROOKS

GRILL RESCUE, LLC,

Plaintiff,

v.

SHENZHEN REEKOOS HOUSEWARE CO., LTD et al.,

Defendants.

_____________________________________/

**ORDER DENYING PLAINTIFF'S MOTION TO STRIKE EXPERT JOHN PLUMPE AND FOR RELATED EXPEDITED DISCOVERY**

THIS CAUSE comes before the Court on Plaintiff's Motion to Strike Defendant Frost Buddy LLC's Expert John Plumpe and for Related Expedited Discovery, filed November 10, 2026. (DE 69). The motion is fully briefed. (DE 70, 71, 76, 81, 82, 83, 84, 85). For the following reasons, the motion is denied.

I. Background

This dispute involves Parties in the beverage container industry and centers on allegations that Defendants misappropriated Plaintiff's confidential information and trade secrets. *See* First Amend. Compl, DE 30. In July 2026, Plaintiff's counsel contacted John Plumpe regarding the possibility of serving as a damages expert in this action and a separate case pending in Illinois. Mr. Plumpe conducted a conflicts review and later participated in two discussions with Plaintiff's counsel concerning the potential engagement. (DE 69 at 1-2; DE 76 at 2-4).

The parties sharply dispute the substance of those discussions. Plaintiff contends that its attorneys disclosed confidential matters including litigation strategy, damages theories, procedural

plans, and counsel's assessments of the strengths and weaknesses of the case. (DE 69 at 2). Mr. Plumpe disputes that characterization and maintains that the discussions were limited to general topics ordinarily discussed during preliminary expert consultations. (DE 76 at 4; Plumpe Decl. ¶¶ 10, 12, 14-16, DE 82).

What is not disputed is that Plaintiff never retained Mr. Plumpe. No engagement letter was executed. No confidentiality agreement or non-disclosure agreement was signed. No retainer was paid. Mr. Plumpe did not perform any analysis for Plaintiff, prepare any work product, formulate opinions on Plaintiff's behalf, or submit invoices. (DE 83 at 1-2; Adam Wolek Decl. ¶ 10, DE 70).

On September 14, 2026, Mr. Plumpe withdrew from consideration as Plaintiff's expert. (DE 69 at 3; DE 76 at 3). He was later retained by Defendant Frost Buddy LLC and served a rebuttal expert report.

Plaintiff now seeks to disqualify Mr. Plumpe and strike his report.

II. Legal Standard

Federal courts possess the inherent authority to disqualify experts in appropriate circumstances. However, disqualification is an extraordinary remedy that should be employed sparingly. *See Koch Ref. Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996).

Courts considering motions to disqualify experts generally consider: (1) whether the moving party had a confidential relationship with the expert, or whether it was objectively reasonable to believe such a relationship existed; (2) whether confidential information was disclosed; and (3) equitable and policy considerations bearing on the fairness and propriety of disqualification. *Id.* at 1181. The Eleventh Circuit has declined to recognize any blanket rule or policy against "side-switching." *See Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1445 (11th Cir. 1998), *overruled on other grounds by Corporacion AIC, SA v. Hidroelectrica Santa Rita S.A.*, 66 F.4th 876 (11th Cir. 2023). The moving party bears the burden

on all elements. *See Glasser v. Hilton Grand Vacations Co., LLC*, No. 8:16-CV-952-T-27AAS, 2017 WL 3584930, at *2 (M.D. Fla. July 24, 2017).

III. Discussion

A. Plaintiff Has Not Established the Existence of a Confidential Relationship

I begin with the threshold issue: whether Plaintiff had a confidential relationship with Mr. Plumpe, or whether it was objectively reasonable to believe such a relationship existed.

I recognize that a formal retention agreement is not required before a confidential relationship may arise between a prospective expert and a litigant. The inquiry is fact-specific and depends upon the totality of the circumstances. In determining whether a confidential relationship existed, there does not appear to be any binding precedent or legal standard. But other trial courts that have addressed this issue tend to take a totality-of-the-circumstances approach, considering such factors as whether the expert was retained, whether confidentiality obligations were imposed, whether compensation was paid, whether work was assigned, and whether the expert undertook substantive responsibilities on the party's behalf. *See Daddono v. Hoffman*, No. 8:21-cv-315-WFJ-MRM, 2022 WL 2802695, at *3-4 (M.D. Fla. July 18, 2022); *United States ex rel. Desrosiers v. Thaller*, No. 12-22445-CIV, 2016 WL 6441548, at *15 (S.D. Fla. Nov. 1, 2016).

The material facts relevant to that inquiry are largely undisputed. Plaintiff contacted Mr. Plumpe regarding the possibility of serving as a damages expert in this action and a separate case pending in Illinois. Mr. Plumpe cleared conflicts and participated in discussions with Plaintiff's counsel regarding a potential engagement. However, Plaintiff never retained him.

No engagement letter was executed. No confidentiality agreement or non-disclosure agreement was signed. No retainer was paid. Mr. Plumpe did not perform any analysis on Plaintiff's behalf. He prepared no expert report, formulated no opinions for Plaintiff, submitted no invoices, and was never assigned substantive expert responsibilities. Indeed, Plaintiff's own

submissions establish that Mr. Plumpe remained only a prospective expert throughout the relevant period. Even in September 2026, Plaintiff was still requesting budget proposals relating to the possibility of retaining him in the future.

These circumstances closely resemble those presented in *Daddono supra*, where the court denied disqualification despite substantive conversations between counsel and a prospective expert and allegations that strategic information had been discussed. As in *Daddono*, there was no executed confidentiality agreement, no formal retention, no payment, and no expert work performed on behalf of the party seeking disqualification.

Plaintiff relies on several cases in which courts found a confidential relationship despite the absence of a formal retention agreement. I recognize that a signed engagement letter or payment of a retainer is not required before a confidential relationship may arise. However, those cases turned on materially different facts. In *Cannon v. DePuy Orthopaedics, Inc.*, for example, the expert participated in multiple meetings, received compensation, expressly agreed to maintain confidentiality, and indicated an intention to work with the party seeking disqualification. *See Cannon v. DePuy Orthopaedics, Inc*., No. 1:22-CV-5152-MLB, 2023 WL 7477903, at *3-4 (N.D. Ga. Aug. 16, 2023). Likewise, in *Lugo v. Hulett Environmental Services, Inc.*, the expert had provided consultation concerning the issues in the case and rendered opinions after receiving information the court deemed confidential. *See Lugo v. Hulett Env't Servs., Inc*., No. 610CV1252ORL22DAB, 2011 WL 13298498, at *3 (M.D. Fla. Jan. 28, 2011). By contrast, Mr. Plumpe was never retained, never compensated, never agreed to confidentiality obligations, and never performed work on Plaintiff's behalf.

Where a sophisticated litigant elects to disclose sensitive information during preliminary discussions with an unretained expert, before establishing a relationship that would reasonably

support an expectation of confidentiality, the risk associated with those disclosures remains with the disclosing party. Indeed, the purpose of the disqualification doctrine is to protect genuinely confidential expert relationships, not to relieve parties of the consequences of disclosing sensitive information during exploratory discussions that never mature into such a relationship.

Plaintiff correctly notes that neither a signed engagement letter nor payment of a retainer is a prerequisite to the formation of a confidential relationship. I do not deny the motion merely because those formalities were absent. Rather, considering the totality of the circumstances discussed above, Plaintiff has not established that it was objectively reasonable to believe Mr. Plumpe occupied a confidential role.

Plaintiff places substantial weight on the fact that Mr. Plumpe cleared conflicts and subsequently participated in discussions concerning the case. I agree that conflict clearance may be relevant to the analysis. It is not, however, dispositive. Conflict clearance alone does not transform a prospective expert into a retained consultant, nor does it create a perpetual disqualifying relationship. *See De Palo v. Ludlam Retail Assocs., Ltd.*, No. 13-20323-Civ, 2013 WL 12304736, at *2 (S.D. Fla. Sept. 9, 2013) (suggesting that conflict clearance alone does not establish a confidential relationship absent an agreement that the expert would serve on the party's behalf). I decline to hold that a prospective expert becomes unavailable to all adverse parties merely because he cleared conflicts and participated in preliminary discussions that never matured into an engagement.

To hold otherwise would substantially expand the doctrine of expert disqualification. If preliminary communications alone were sufficient to create a disqualifying confidential relationship, parties could effectively reserve portions of the expert marketplace through exploratory contacts that never mature into an actual engagement. Disqualification standards

should not be applied in a manner that allows parties to create inexpensive preliminary relationships with experts for the purpose of preventing their later use by an adversary. *See Koch*, 85 F.3d at 1183. That concern has particular force where, as here, the Parties never progressed beyond preliminary discussions concerning a potential engagement.

Considering the totality of the circumstances, I conclude that Plaintiff has failed to establish that it had a confidential relationship with Mr. Plumpe or that it was objectively reasonable to believe such a relationship existed. Because Plaintiff has failed to satisfy this threshold requirement, the motion must be denied.

B. The Parties' Factual Dispute Regarding the Substance of the August Discussions Need Not Be Resolved

The Parties sharply dispute the substance of the August 2026 communications. Plaintiff contends that its attorneys disclosed litigation strategy, damages theories, procedural plans, and counsel's assessments of the strengths and weaknesses of the case. Mr. Plumpe disputes that characterization.

I need not resolve that dispute. Even accepting Plaintiff's description of the communications as true, Plaintiff has failed to establish the threshold requirement necessary for disqualification: the existence of a confidential relationship or an objectively reasonable belief that such a relationship existed. Accordingly, I decline to make findings concerning the precise scope of the Parties' communications.

C. Equitable Considerations Weigh Against Disqualification

By the time the motion was filed, Frost Buddy had retained Mr. Plumpe, obtained and served his expert report, incurred significant expense associated with his work, and produced him for deposition. Disqualification at this stage would substantially disrupt the orderly progress of the litigation.

Moreover, I find no evidence that Frost Buddy retained Mr. Plumpe for an improper purpose, sought deliberately to obtain Plaintiff's confidential information, or otherwise engineered the circumstances giving rise to this dispute. Rather, the record reflects that Mr. Plumpe withdrew from consideration by Plaintiff and was subsequently retained by Frost Buddy.

Plaintiff also emphasizes that Mr. Plumpe informed Frost Buddy's counsel of his prior communications with Plaintiff before accepting Frost Buddy's engagement. Even assuming Frost Buddy was aware of those prior communications, that fact does not alter the analysis. The relevant question is whether those communications gave rise to a disqualifying confidential relationship. Because I conclude that Plaintiff has not established such a relationship, Frost Buddy's awareness of the prior contacts does not justify disqualification.

Under these circumstances, the balance of equities weighs strongly against the drastic remedy of disqualification.

D. Expedited Discovery

Plaintiff alternatively seeks expedited discovery concerning the circumstances of Mr. Plumpe's engagement. Because Plaintiff has failed to establish the threshold requirement of a confidential relationship, the requested discovery would not alter the analysis. In addition, the record reflects that Plaintiff deposed Mr. Plumpe and questioned him regarding the issues underlying the present motion. The request for expedited discovery is therefore denied.

## CONCLUSION

In sum, Plaintiff has failed to establish that it had a confidential relationship with Mr. Plumpe or that it was objectively reasonable to believe such a relationship existed. Because Plaintiff has not satisfied this threshold requirement, it has not demonstrated that the extraordinary remedy of expert disqualification is warranted, and the remaining disputed issues are rendered moot.

Accordingly, it is **ORDERED AND ADJUDGED**:

1. Plaintiff's Motion to Strike Defendant Frost Buddy LLC's Expert John Plumpe and for Related Expedited Discovery (DE 69) is **DENIED.**

2. Plaintiff's request for expedited discovery is **DENIED.**

3. John Plumpe may continue to serve as Frost Buddy LLC's expert in this action.

**SIGNED** in Chambers at West Palm Beach, Florida, this 23rd day of November, 2026.

Donald M. Middlebrooks
United States District Judge

Copies to: Counsel of Record